# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNIFER ROUSH, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-21-556 |
| | § | |
| SAN JOAQUIN VALLEY COLLEGE and | § | |
| KEN GUERRERO, | § | |
| | § | |
| Defendants. | § | |
| | § | |

# MEMORANDUM AND OPINION

Jennifer Roush was pregnant and about to take maternity leave when she was terminated from her employment at San Joaquin Valley College.  Around the same time, Roush and some of her coworkers had been subpoenaed to testify before a grand jury about an on-campus assault perpetrated on Roush by her ex-boyfriend.  According to the College, Roush was fired because she directed a coworker not to tell her supervisors that she would be missing work to testify.  Roush maintains, in contrast, that the College fired her either because she was pregnant and about to take leave, or because she had been a victim of crime.

The College has moved for summary judgment on Roush's employment discrimination, retaliation, and tort claims.  Summary judgment is granted in part and denied in part.  The reasons are set out below.

## I.      Background

### A.      The Assault Investigation

In 2010, Jennifer Roush began working as a career services advisor at the Visalia, California campus of San Joaquin Valley College.  (Docket Entry No. 35-4 at 98).  In 2019,

Roush's ex-boyfriend, Richard Ramirez, assaulted Roush in her office at the College.  (Docket Entry No. 45-3 at 165).  At least three of Roush's co-workers witnessed Ramirez come onto campus and enter Roush's office the day of the assault: Timberly Ferris, Bianca Leal, and Stacey Elenes.  (*Id.* at 43–44).

In 2019, the Tulare County District Attorney's Office began investigating Ramirez in connection with the assault.  (Docket Entry No. 45-5 at 18).  The D.A.'s Office informed Roush that: (1) some of her co-workers would be subpoenaed in March 2020 to testify about the assault before a grand jury, (Docket Entry No. 45-3 at 31); (2) the co-workers could choose when and where they wanted to be served with the subpoenas, (*id.* at 31, 45); and (3) the grand jury proceeding was "highly confidential" and should not be discussed "with anybody," (*id.* at 79).

Roush informed two of her supervisors that College employees would be served with subpoenas and would have to miss work to testify before the grand jury. (Docket Entry No. 45-3 at 46–47; Docket Entry No. 35-6 at 2).  The supervisors were Kenneth Guerrero, president of the Visalia campus; and Brandi Hammons, director of graduate services.  (Docket Entry No. 45-3 at 46–47).

Roush also told Ms. Hammons what the D.A.'s Office had told her: the grand jury proceeding was confidential and could be jeopardized if the case or the subpoenas were not kept secret.  (Docket Entry No. 45-3 at 79).  Despite her concern for secrecy, Roush asked Ms. Hammons if she could give Ms. Elenes notice that she would be served with a subpoena and would have to miss work on March 17.  (*Id.* at 81).  Ms. Hammons gave Roush permission to talk to Ms. Elenes and gave Ms. Elenes approval to miss work to testify before the grand jury.  (*Id.*).  Ms. Hammons told Roush that Ms. Elenes would not be doing a "no call/no show" because her absence was approved.  (*Id.*).  Roush then texted Ms. Elenes that her absence had been approved by Ms.

Hammons and said that it would be "okay to no call/no show." (*Id.*). Roush also told Ms. Elenes not to talk to anyone about the case, including Patricia Hruby, the president of the Fresno campus where Ms. Elenes worked. (*Id.* at 84).

On the morning of March 10, 2020, an investigator from the D.A.'s Office came to the president's office at the Visalia campus. (*Id.* at 119). The president, Mr. Guerrero, told the investigator that it was "against our policy" to allow the subpoenas to be served on campus. (*Id.* at 131). The investigator left but returned to campus that afternoon and successfully served the subpoenas on Ms. Elenes, Ms. Ferris, and the campus registrar, Alan Pearce. (*Id.* at 131–32).

After being served with the subpoena, Ms. Elenes notified Ms. Hammons that Roush had told her "to do a no call/no show." (Docket Entry No. 35-6 at 3). Ms. Elenes expressed concern because she knew "that not calling out is unprofessional and [] was unsure of how to handle th[e] situation." (*Id.*). At Ms. Hammons's suggestion, Ms. Elenes called the D.A.'s Office, which "confirmed that she can inform her employer." (*Id.*).

### B.    Roush's Termination

On March 11, 2020, Ms. Hammons reported to the human resources director, Venus Tayco, that Roush had "stated that the employees that were served are not able to tell their employers that they need to miss work, they are required to do a 'no call/no show', If [*sic*] they tell their employer, it can ruin the case." (Docket Entry No. 45-3 at 184). Ms. Hammons continued: "Jennifer telling another employee that she is required to 'no call no show' when that was not the situation, causes Stacy [Elenes] to be at risk for not following protocol when it comes to taking a day off. How should this be addressed with Jennifer?" (*Id.* at 185). Ms. Tayco forwarded the email up her chain of command, stating: "The crux is that campus protocol for subpoenas and employees being served was deliberately breached [*sic*] by Jennifer for her own gain, bringing personal issues into the

3

workplace and causing disruption.  We are expecting termination, pending investigation." (*Id.* at 184).

The College's human resources department conducted an investigation, assisted by Mr. Guerrero.  The investigation included receiving email statements from Ms. Pearce, Ms. Elenes, Mr. Guerrero, Ms. Ferris, and Ms. Diana Cote.  (*Id.* at 114, 116, 119, 139, 147).

On March 18, 2020, a "Separation Request Form" was prepared and approved by Mr. Guerrero, vice president of administration Scott Hager, and Ms. Tayco.  (*Id.* at 199).  The Form reflected that Roush was terminated effective March 18 for "Inappropriate behavior as a leader in the organization to guide and misdirect employees to willfully violate our policy for notifying us of their absence.  See attached supporting documentation." (*Id.*).  The supporting documentation was Ms. Elenes's email statement, in which she stated that: "I was told by my previous manager [Roush] to no call no show on Tuesday March 17th.  I also shared this information with Brandi [Ms. Hammons]." (*Id.* at 201).

### C.   Roush's Discrimination Allegations

Roush contends that the College terminated her employment because: (1) she was pregnant and planning to take maternity leave in May 2020; and (2) she had been a victim of domestic violence.  (Docket Entry No. 9).

Roush relies on three statements allegedly made by Mr. Guerrero to support her charge of pregnancy discrimination.  First, in January 2020, Roush, Mr. Guerrero, and the college president and CEO, Mike Perry, were giving a senator a tour of the Visalia campus.  (Docket Entry No. 35-4 at 82).  According to Roush, Mr. Perry "was overly excited that I was pregnant," which "irritat[ed]" Mr. Guerrero.  (*Id.* at 82–83).  After the tour, Mr. Guerrero allegedly told Roush:

4

"[O]bviously you're pretty close with Mike Perry, and you seem to know all the bigwigs here. . . . And they're sure excited about your pregnancy." (*Id.* at 84).

Second, in February 2020, Mr. Guerrero allegedly told Roush that he did not want her to "have a miscarriage or anything," but that she would be "responsible" for the College's career placement numbers while she was on maternity leave, and that if "the numbers aren't met," she could be fired. (Docket Entry No. 45-3 at 37).

Third, when Mr. Guerrero met with Roush on March 18, 2020, to terminate her employment, Mr. Guerrero allegedly told Roush, "now you're going on [u]nemployment, not maternity leave." (Docket Entry No. 35-4 at 92).

### D.     The Procedural History

In November 2020, Roush filed discrimination charges with the California Department of Fair Employment and Housing. (*Id.* at 118). The Department sent Roush a right to sue letter:

> This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 11, 2020 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.
>
> This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.
>
> To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

(*Id.* at 110).

In February 2021, Roush sued the College and Mr. Guerrero in Tulare County Superior Court. (Docket Entry No. 1-2). The defendants removed based on federal question jurisdiction. (Docket Entry No. 1).

Roush's operative second amended complaint alleges the following causes of action: (1) pregnancy discrimination, in violation of the California Fair Employment and Housing Act, CAL. GOV'T CODE § 12940(a); (2) sex and pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2; (3) wrongful termination, in violation of public policy; (4) interference under the federal Family Medical Leave Act, 29 U.S.C. § 2612; (5) retaliation, in violation of the California Family Rights Act, CAL. GOV'T CODE § 12945.2, *et seq.*; (6) retaliation, in violation of the Family Medical Leave Act, 29 U.S.C. § 2615(a); (7) retaliation, in violation of Title VII, 42 U.S.C. § 2000e–3; (8) a violation of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, *et seq.*; (9) a violation of the California Labor Code § 1102.5, *et seq.*; (10) negligent infliction of emotional distress; and (11) intentional infliction of emotional distress.  (Docket Entry No. 9).

In February 2023, the defendants moved for summary judgment.  (Docket Entry No. 35). Roush filed a response in opposition, including objections to the defendants' summary judgment evidence and a request for judicial notice.  (Docket Entry No. 45).  The defendants replied. (Docket Entry No. 47).

In April 2024, the case was assigned to this court, which is temporarily performing judicial duties in the United States District Court for the Eastern District of California to ease the backlog in that overburdened district.  (Docket Entry No. 48).

Based on the record, the briefs, and the applicable law, the defendants' motion for summary judgment is granted in part and denied in part.  Roush's evidentiary objections and requests for judicial notice are denied as moot because the court's disposition does not depend on the evidence that is the subject of those objections and requests.  The reasons are set out below.

6

## II.     The Rule 56 Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).   The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  If the moving party meets its burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007) (citations omitted).

## III.    Analysis

### A.     Exhaustion

The College argues that Roush's Title VII claims are barred because she failed to exhaust her administrative remedies by submitting the claims to the Equal Employment Opportunity Commission and receiving a "right to sue" letter before filing suit.  *See* 42 U.S.C. § 2000e–5(e)(1), (f)(1).  Roush responds that she fulfilled the charge-filing requirement by filing her claims with the Department of Fair Employment and Equal Housing because the Department and the EEOC

have an agreement that "claims filed with one agency are concurrently filed with the other agency."

(Docket Entry No. 45 at 18).

In *Parker-Reed v. Sprint Corp.*, the Eastern District of California rejected an identical

argument by an employment-discrimination plaintiff:

> Plaintiff is correct that the DFEH is an approved state agency and has entered into a workshare agreement with the EEOC. Plaintiff's contention, however, that the foregoing provision acts to transform her DFEH filing into an EEOC filing such that it satisfies her EEOC administrative exhaustion requirement is unavailing. While this provision does provide that a claim received by a state agency is "deemed received" by the EEOC, it is only deemed received "for purposes of Section 1626.7." 29 C.F.R. 1626.10(c). Section 1626.7 refers solely to the timeliness, as opposed to the existence, of an EEOC charge. Specifically, that section provides that in the event an aggrieved party initially files a charge with a state agency, that party has 300 days from the date of the alleged violation to file a charge with the EEOC as opposed to the statutorily proscribed 180 days. 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. 1626.7. This provision extended Plaintiff's time to file her EEOC charge from 180 days to 300 days. Nonetheless, Plaintiff has never filed a claim with the EEOC and this provision does nothing to cure that procedural defect.

No. CIVS032616MCEPAN, 2005 WL 2648028, at *3 (E.D. Cal. Oct. 14, 2005).

The court is persuaded by the reasoning in *Parker-Reed*. The workshare agreement

between the Department of Fair Employment and Equal Housing and the Equal Employment

Opportunity Commission does not excuse a plaintiff from having to file charges with the

Commission—not merely the Department of Fair Employment and Equal Housing—before

asserting her Title VII claims in federal court. In order to file her Title VII causes of action in

federal court, Roush would have had to file a separate charge with the Commission, as the right-to-sue letter she received from the Department of Fair Employment and Equal Housing instructed.

Because Roush did not file a charge with the Equal Employment Opportunity Commission, summary judgment is granted on her Title VII claims.

### B.   The Fair Employment and Housing Act Pregnancy Discrimination Claim

Section 12940(a) of the California Fair Employment and Housing Act makes it an unlawful employment practice to discriminate against any person because of sex.  CAL. GOV'T CODE § 12940(a).  Discrimination on the basis of pregnancy is a form of sex discrimination prohibited by § 12940(a).  *Badih v. Myers*, 36 Cal. App. 4th 1289, 1294, 43 Cal. Rptr. 2d 229 (1995); *Fu v. Walker Parking Consultants*, 796 F. Supp. 2d 1148, 1154 (N.D. Cal. 2011).

To withstand summary judgment, a plaintiff asserting a § 12940(a) claim may present direct or circumstantial evidence.  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption."  *Fu*, 796 F. Supp. 2d at 1154 (quoting reference omitted) (alteration adopted).  Even "very little" direct evidence may suffice to survive summary judgment.  *Vallimont v. Chevron Energy Tech. Co.*, 434 Fed. Appx. 597, 599 (9th Cir. 2011) (quoting reference omitted).  But when a plaintiff relies on circumstantial evidence, the evidence must be "specific and substantial."  *Id.*

If the plaintiff relies only on circumstantial evidence, then the *McDonnell Douglas*[1] burden-shifting framework applies.  *Fu*, 796 F. Supp. 2d at 1155.  Under that analysis, the plaintiff must first establish a prima facie case by showing that: "(1) she was a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination; and (4) some other circumstance suggests discriminatory

---

[1]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

motive." *Id.* (quotation marks and quoting reference omitted).  The plaintiff's prima facie burden "is not onerous." *Id.* (quotation marks and quoting reference omitted).

Once the plaintiff makes a prima facie showing, the burden shifts to the employer to proffer evidence that it had legitimate, nondiscriminatory reasons for the employment decision. *Id.* "Legitimate" reasons are those that are "facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." *Id.* (quoting reference omitted).  An employer's proffered nondiscriminatory reasons "need not necessarily have been wise or correct." *Id.* (quoting reference omitted).

To withstand summary judgment when an employer has proffered facially legitimate, nondiscriminatory reasons, the plaintiff must raise a factual dispute as to whether the reasons are pretextual, "either directly by persuading the fact-finder that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Vallimont*, 434 Fed. App'x at 599 (quoting reference omitted).

Roush does not argue that she has produced direct evidence of pregnancy discrimination, and there is no evidence in the record of any statements that prove, "without inference or presumption," that Roush's employment was terminated because she was pregnant or was about to take maternity leave. The court analyzes Roush's pregnancy discrimination claim under the *McDonnell Douglas* burden-shifting framework.

The defendants do not dispute that Roush has met the first three elements of her prima facie case: she was pregnant when she was terminated; she was performing competently; and her termination was an adverse employment action.  The defendants argue only that she has not

established a causal connection between her pregnancy and termination.  (Docket Entry No. 35-1 at 16).

Roush has met her burden of showing that pregnancy was a "substantial factor" behind her termination.  *See Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232, 294 P.3d 49, 66 (2013). She has produced evidence that Mr. Guerrero, who approved her termination, told her that she would be responsible for the College's employment numbers while she was on maternity leave. (Docket Entry No. 45-3 at 37).  She has also produced evidence that would allow a reasonable jury to find that Mr. Guerrero was irritated that Roush was pregnant and would be taking leave.  It is also undisputed that Roush was terminated, at most, only a few months before she was expected to take maternity leave.  (Docket Entry No. 35-4 at 82–83).  This evidence satisfies Roush's prima facie causation burden, which is "not onerous."

The burden shifts to the defendants to proffer a legitimate, nondiscriminatory reason for Roush's termination.  The defendants have met this burden by explaining that Roush "was terminated for instructing employees that they can and must 'no call/no show' to attend the criminal proceeding relating to Plaintiff's ex-boyfriend."  (Docket Entry No. 35-1 at 19).

To show that the defendants' proffered reason is pretextual, Roush must point to or produce "significant, substantial evidence of pretext."  *Fu*, 796 F. Supp. 2d at 1155.  Roush has satisfied this burden.  Roush denies having ever instructed any employees to "no call/no show."  At most, she admits to having joked with Ms. Elenes that she could "no call/no show."  (Docket Entry No. 45-3 at 81).  The court must presume on summary judgment that Roush only jokingly told her co-workers that they should "no call/no show" so they could respond to the grand jury subpoena.  The College's finding, based on its investigation, that Roush did instruct Ms. Elenes to "no call/no show," could qualify as a legitimate, nondiscriminatory reason unless there is evidence that the

finding was not reached in good faith, but was instead a pretext to terminate Roush because of her pregnancy. *See Fu*, 796 F. Supp. 2d at 1155 (an employer's proffered nondiscriminatory reasons "need not necessarily have been wise or correct").

Roush has produced evidence casting doubt on whether the College's investigation was conducted in good faith, and whether the stated reason for her termination is "[]worthy of credence." *Vallimont*, 434 Fed. App'x at 599.  It is undisputed that the College did not interview or solicit a statement from Roush.  When Mr. Guerrero received Ms. Elenes's statement that Roush told her to "no call/no show," Mr. Guerrero "simply reported" the statement up the chain of command.  (Docket Entry No. 45-3 at 94–95).  Roush was never asked whether what Ms. Elenes said was true.  On summary judgment, the court must accept Roush's testimony that she discussed Ms. Elenes's absence in advance with Ms. Hammons, that Ms. Hammons said she would "handle" it with Ms. Elenes's supervisor, and that it would not be a "no call/no show" because "you're telling me."  (Docket Entry No. 45-3 at 81).  Viewing the evidence in the light most favorable to Roush and drawing all reasonable inferences in her favor, Roush's termination was not supported by a good-faith investigation of the facts, and the proffered reason for the termination is unworthy of credence.

Roush's pregnancy discrimination claim under the Fair Employment and Housing Act withstands summary judgment.

### C.    The California Family Rights Act Retaliation Claim

The California Family Rights Act "is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security." *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1253, 82 Cal. Rptr. 3d 440, 454 (2008), *as modified on denial of reh'g* (Aug. 28, 2008) (quoting reference omitted).  The Act makes it "an

unlawful employment practice for an employer to . . . discharge . . . any individual because of . . . [a]n individual's exercise of the right to family care and medical leave provided by subdivision (a)."  CAL. GOV'T CODE § 12945.2(k).  "Family care and medical leave" includes "[l]eave for reason of the birth of a child of the employee," § 12945.2(b)(5)(A), including "bonding with a child after birth," CAL. CODE REGS., tit. 2, § 11087.

The elements of a cause of action for retaliation in violation of the California Family Rights Act are: "(1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, because of her exercise of her right to CFRA leave."  *Avila*, 165 Cal. App. 4th at 1254 (quoting reference omitted and alteration adopted).  Once a plaintiff establishes these prima facie elements, the familiar *McDonnell Douglas* burden-shifting framework applies.  *Ruiz v. RSCR California, Inc.*, 683 F. Supp. 3d 1079, 1096–97 (C.D. Cal. 2023).

The College disputes only the fourth prima facie element: "Plaintiff cannot establish that [the] decision to terminate [her] was based on [her] exercise of [] CFRA rights."  (Docket Entry No. 35-1 at 21).  The record shows that Roush has made a prima facie showing of a causal connection between her status as a pregnant employee who was about to take leave under the California Family Rights Act and her termination.  The evidence summarized in the previous section on Roush's Fair Employment and Housing Act pregnancy discrimination claim also supports the California Family Rights Act claim; the court need not recount the evidence again.

The College again relies on Roush's alleged instruction to Ms. Elene to "no call/no show" as a legitimate, non-retaliatory reason for her termination.  (Docket Entry No. 35-1 at 21).  For the

reasons stated in the previous section, Roush has demonstrated that this reason is pretext because it is unworthy of credence.

Roush's California Family Rights Act retaliation claim withstands summary judgment.

### D.      The Fair Employment and Housing Act Retaliation Claim

Section 12940(h) makes it an unlawful employment practice "[f]or any employer[] . . . to discharge[] . . . any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." CAL. GOV'T CODE § 12940(h).  To make a prima facie showing of retaliation under the Act, "a plaintiff must show: (1) she engaged in a 'protected activity,' (2) the employer subjected her to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042, 116 P.3d 1123, 1130 (2005).  Once the employee makes a prima facie showing, *McDonnell Douglas* applies.  *Id.*

Roush articulates two "protected activities" in support of her retaliation claim:

> Plaintiff engaged in two protected actions before she was terminated: first, she was a victim of domestic abuse and pursued her right to participate in bringing him to justice and, second, she was pregnant and announced that she would take a maternity leave and it might be earlier than anticipated because of complications.

(Docket Entry No. 45 at 26).

In support of the first theory of protected activity, Roush relies on California Labor Code § 230, which prohibits employers from, among other things, discharging an employee "because of the employee's status as a victim of crime or abuse."  CAL. LAB. CODE § 230(e).  The College objects that Roush's reliance on § 230(e) represents a new cause of action improperly presented for the first time in her summary judgment response.  (Docket Entry No. 47 at 5–6).  The court agrees.  *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)

14

("Simply put, summary judgment is not a procedural chance to flesh out inadequate pleadings.");
*Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006).

Roush's second theory of protected activity also fails. An employer retaliates in violation of the Fair Employment and Housing Act when it discharges a person "because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." CAL GOV'T CODE § 12940(h). Roush does not allege that the College retaliated against her for opposing any "practices forbidden" by the Fair Employment and Housing Act. Nor does she allege that the College retaliated against her for filing a complaint, testifying, or assisting in any Department of Fair Employment and Equal Housing proceeding. Summary judgment is granted on Roush's claim of retaliation under the Fair Employment and Housing Act.

## E.     The Federal Family and Medical Leave Act Interference Claim

The Family and Medical Leave Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," including the right to leave "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. §§ 2612, 2615. Under its delegated authority to promulgate regulations implementing the Act, § 2654, the Department of Labor has clarified that "employers cannot use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *see also Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1122–23 (9th Cir. 2001) (holding that § 825.220(c) is "a reasonable interpretation of the [FMLA]'s prohibition on 'interference with' and 'restraint of' employee's rights under the FMLA").

To withstand summary judgment on a Family and Medical Leave Act interference claim, a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder*, 259 F.3d at 1125. "No scheme shifting the burden of production back and forth is required." *Id.*

The court has already concluded, in its analysis of Roush's Fair Employment and Housing Act discrimination claim, that Roush has shown that her pregnancy and anticipated leave were "substantial factors" behind her termination. *See Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232, 294 P.3d 49, 66 (2013). The "substantial factor" standard is more demanding than the "negative factor" standard required to establish an interference claim. Roush's Family and Medical Leave Act interference claim withstands summary judgment.

### F.     The Claim under the California Labor Code, Section 1102.5(b)

Section 1102.5(b) of the California Labor Code provides:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

To make a prima showing of a violation of § 1102.5(b), a plaintiff must show, by a preponderance of the evidence, that retaliation was a contributing factor in the challenged employment action. CAL. LAB. CODE § 1102.6; *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 718 (2022). "[P]laintiffs may satisfy their burden of proving unlawful retaliation even when other, legitimate factors also contributed to the adverse action." *Id.* at 713–14. The burden then shifts to the employer to demonstrate, by clear and convincing evidence, that it would

have taken the action for legitimate, independent reasons even had the plaintiff not engaged in protected activity.  *Id.*; CAL LAB CODE § 1102.6.  The *McDonnell Douglas* burden-shifting framework is not part of the § 1102.5(b) analysis.  *Lawson*, 12 Cal. 5th at 716.

Roush offers a single paragraph in support of her § 1102.5(b) claim:

> There is ample evidence Plaintiff suffered an assault, reported it and was going to testify against her abuser.  Also, it is clear that Defendant Guerrero and Brandi Hammons knew that Plaintiff was going on maternity leave any day as she had just informed them she was having pregnancy complications.

(Docket Entry No. 45 at 29).

Roush has failed to explain how these allegations support a viable § 1102.5(b) claim.  It is undisputed that Roush was going to testify before a grand jury in connection with the investigation of her ex-boyfriend.  However, Roush has produced no evidence that this was a factor in the College's decision to terminate her employment.  Roush's imminent maternity leave is irrelevant to a cause of action under § 1102.5(b), which is intended to protect whistleblowers from retaliation, not to protect against retaliation for taking maternity leave.

Summary judgment is granted on Roush's § 1102.5(b) claim.

## G.     The Wrongful Termination in Violation of Public Policy Claim

California recognizes a cause of action for wrongful discharge in violation of public policy. *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1114 (S.D. Cal. 2020).  "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm."  *Id.* (quoting *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 144, 154, 176 Cal. Rptr. 3d 824 (2014)).  Terminating an employee because of the employee's protected status or activity, in violation of the Fair Employment and Housing Act or the California Family Rights Act, also

amounts to wrongful discharge in violation of public policy. *See Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1021 (E.D. Cal. 2011); *Faust v. California Portland Cement Co.*, 150 Cal. App. 4th 864, 886, 58 Cal. Rptr. 3d 729, 744 (2007).

Because Roush's Fair Employment and Housing Act discrimination claim and her California Family Rights Act retaliation claim withstand summary judgment, so does her claim for wrongful termination in violation of public policy. *See Holtzclaw*, 795 F. Supp. 2d at 1021; *Faust*, 150 Cal. App. 4th at 886.

### H.     The Unfair Competition Claim

Section 17200 of the California Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. California courts have held that discrimination in violation of the Fair Employment and Housing Act can constitute "unfair" competition under § 17200 because it may give employers an "unfair competitive edge over employers that comply with the FEHA." *Herr v. Nestle U.S.A., Inc.*, 109 Cal. App. 4th 779, 790, 135 Cal. Rptr. 2d 477 (2003). In *Herr*, for example, the court held that age discrimination "implicates unfair competition" because "older workers, who have worked their way up the ranks, frequently are more highly compensated than their younger colleagues." *Id.*

Roush argues that pregnancy discrimination in violation of the Fair Employment and Housing Act also violates § 17200. Roush does not cite direct authority for this proposition, but the court is persuaded that the California Supreme Court, if it addressed the issue, would hold that pregnancy discrimination, like age discrimination, violates § 17200 by giving employers a "competitive edge." *See Christie's Cabaret of Glendale LLC v. United Nat'l Ins. Co.*, 562 F. Supp. 3d 106, 116 n.2 (D. Ariz. 2021) (when a state's highest court has not addressed an issue, a federal court applying state law "must make an *'Erie* guess' as to how the state's highest court would

resolve the issue") (citing *Thornell v. Seattle Serv. Bureau, Inc.*, 742 F. App'x 189, 191 (9th Cir. 2018)).  The California Supreme Court has recognized a § 17200 cause of action based on an employer's failure to pay statutorily mandated overtime wages.  *See Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178, 999 P.2d 706 (2000).  And terminating pregnant employees could give employers an unfair advantage over competitors who give those employees the legally required leave.  *See* CAL GOV'T CODE §§ 12945.2(k), 12945.2(b)(5)(A); CAL CODE REGS., tit. 2, § 11087; *cf. Herr*, 109 Cal. App. 4th at 790.

Because Roush's FEHA pregnancy discrimination claim withstands summary judgment, so does her § 17200 claim.

## I.  The Negligent Infliction of Emotional Distress Claim

Roush states in her response to the motion for summary judgment that she "withdraws and dismisses her claim for Negligent Infliction of Emotional Distress."  (Docket Entry No. 45 at 30). The claim is dismissed, without prejudice.

## J.  The Intentional Infliction of Emotional Distress Claim

The elements of a claim for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050, 209 P.3d 963, 976 (2009) (quotation marks and quoting reference omitted).  Conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Id.* at 1051 (quotation marks and quoting reference omitted).  Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.*

(quoting reference omitted).   Ordinary employment decisions, like terminating an employee, generally do not rise to the level of "outrageous" conduct, even when motivated by discriminatory animus.   *See, e.g.*, *Shoemaker v. Myers*, 52 Cal. 3d 1, 25, 801 P.2d 1054 (1990) ("The kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship."); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80, 53 Cal. Rptr. 2d 741 (1996) ("If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.").

The summary judgment record contains no evidence of "extreme and outrageous conduct." There is no allegation or evidence that Mr. Guerrero or anyone else acting on behalf of the College used profanity, public ridicule, "vile" insults, or physical threats toward Roush.   *Compare Sanchez–Corea v. Bank of America*, 38 Cal.3d 892, 909, 701 P.2d 826, 838, 215 Cal.Rptr. 679, 691 (1985); *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 496–97, 468 P.2d 216, 217, 86 Cal.Rptr. 88, 89 (1970); *Kiseskey v. Carpenters' Trust*, 144 Cal.App.3d 222, 229, 192 Cal.Rptr. 492, 496 (1983); *Newby v. Alto Riviera Apartments*, 60 Cal.App.3d 288, 297–98, 131 Cal.Rptr. 547, 553–54 (1976).   On the contrary, the evidence construed in Roush's favor supports a finding of conduct that may be discriminatory and may "merit opprobrium," without "qualify[ing] as the kind of 'outrageous' conduct necessary to support an action for intentional infliction of emotional distress."   *Kruse v. Bank of America*, 202 Cal. App. 3d 38, 67–68 & n.21 (1988).

Summary judgment is granted on Roush's intentional infliction of emotional distress claim.

### K.      The Punitive Damages Claim

Section 3294(a) of the California Civil Code provides: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual

damages, may recover damages for the sake of example and by way of punishing the defendant." "Malice" is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." CAL. CIV. CODE § 3294(c)(1). "Oppression" is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." § 3294(c)(2). "Fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." § 3294(c)(3).

Section 3294(b) "permits punitive damages against a corporate employer if the employee is sufficiently high in the corporation's decision-making hierarchy to be an 'officer, director, or managing agent.'" *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 63, 43 Cal. Rptr. 3d 874, 896 (2006) (quoting § 3294(b)). An "officer, director, or managing agent [is] someone who 'exercises substantial discretionary authority over decisions that ultimately determine corporate policy.'" *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 714, 219 P.3d 749, 767 (2009), *as modified* (Feb. 10, 2010) (quoting reference omitted) (alteration adopted). "Corporate policy" means "formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership. It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice." *Id.* at 715. To demonstrate that an employee is a "true managing agent . . .[,] a plaintiff seeking punitive damages would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577, 981 P.2d 944 (1999).

Both the "oppression, fraud, or malice" findings under § 3294(a) and the "officer, director, or managing agent" findings under § 3294(b) must be made by "clear and convincing" evidence. *Barton v. Alexander Hamilton Life Ins. Co. of Am.*, 110 Cal. App. 4th 1640, 1644, 3 Cal. Rptr. 3d 258, 261 (2003).  On summary judgment, "the evidence and all inferences which can reasonably be drawn therefrom must meet that higher standard."  *Id.* at 1644.

The College argues that Roush's punitive damages claim fails as a matter of law because there is no factual dispute material to determining whether anyone responsible for Roush's termination was (1) an "officer[], director[], or managing agent[]" of the College, or (2) was "guilty of oppression, fraud, or malice."  (Docket Entry No. 35-1 at 29–30).

Roush has produced evidence that would allow a reasonable jury to find that she was terminated by managing agents of the College who were guilty of malice or fraud.  The California Supreme Court's decision in *White* is instructive.  In that case, a convenience store employee was terminated after testifying at a former co-worker's unemployment benefits hearing.  21 Cal. 4th at 567.  The "zone manager" who terminated the plaintiff testified at trial that the plaintiff was terminated for stealing soda from the store, not for giving testimony.  *Id.* at 568.  A jury found that the zone manager had terminated the plaintiff for giving testimony, in violation of public policy, and awarded compensatory and punitive damages.  *Id.*

On appeal, the Supreme Court clarified the contours of the "officer, director, or managing agent" requirement.  The court rejected the standard applied by the court of appeals, which had defined "managing agent to include essentially all supervisory employees who possess the ability to hire and fire workers."  *Id.* at 574.  Instead, the court held that:

> [T]he Legislature intended that principal liability for punitive damages not depend on employees' managerial level, but on the extent to which they exercise substantial discretionary authority over decisions that ultimately determine corporate policy. Thus, supervisors who have broad discretionary powers and exercise substantial

discretionary authority in the corporation could be managing agents. Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees.

*Id.* at 576–77.  Applying this standard, the court held that the zone manager was a "managing agent" because she:

exercised substantial discretionary authority over vital aspects of [the] business that included managing numerous stores on a daily basis and making significant decisions affecting both store and company policy. In firing [the plaintiff] for testifying at an unemployment hearing, [the zone manager] exercised substantial discretionary authority over decisions that ultimately determined corporate policy in a most crucial aspect of [the] business.

*Id.* at 577.

In a concurring opinion, Judge Mosk noted that the zone manager:

was not a high-level manager or final policy maker for [the company]. . . .  In effect, she was an local supervisor; indeed, according to the testimony of her supervisors, she apparently lacked the authority to terminate plaintiff without the approval of Ultramar's human resources manager and division manager. Nor did she purport to set any firm-wide or official policy concerning termination of employees for testifying at unemployment hearings. Like the employees in *Egan* and *Agarwal*, however, she exercised authority that "necessarily result[ed] in the ad hoc formulation of policy" that adversely affected plaintiff. Specifically, she engaged in a local practice of retaliating against, by firing, an employee who testified at the unemployment hearing of another [] employee.

*Id.* at 580.

The court finds that Roush has produced evidence allowing a reasonable jury to find, by clear and convincing evidence, that the College employees who approved her termination were managing agents.  Mr. Guerrero, like the zone manager in *White*, "was not a high-level manager or final policy maker" for the College.  *Id.*  As the defendants note, he was not part of the "executive committee consisting of the" chief officers of the College, who were responsible for setting official policy.  (Docket Entry No. 35-5 at 2).  However, as campus president, he was responsible for managing the Visalia campus and the employees who worked there.  (Docket Entry No. 35-4 at

41).  And, by facilitating the investigation and approving Roush's termination, he participated in "ad hoc formulation of policy."  *White*, 21 Cal. 4th at 580.  The content of the ad hoc policy embodied by Mr. Guerrero's actions is a question for the jury.  A jury could reasonably find that Mr. Guerrero established a policy of, for example, terminating employees without giving them an opportunity to contradict the witness statements against them.  Or, a jury could find that he established a policy of terminating pregnant employees on the verge of taking maternity leave, and concealing discriminatory animus with a pretextual violation of College policy.  These findings would, in turn, support a finding of "malice" or "fraud" under § 3294(a).

The defendants' reliance on *Kelly-Zurian v. Wohl Shoe Co.*, is misplaced.  22 Cal. App. 4th 397, 27 Cal. Rptr. 2d 457 (1994), *as modified* (Mar. 4, 1994).  In that case, a jury awarded punitive damages against a company based on a supervisor's sexual harassment of the plaintiff. The court of appeals vacated the punitive damages award because "the jury could not have made the finding that [the supervisor] was a managing agent."  *Id.* at 421.  The evidence reflected that the supervisor merely "had immediate and direct control over [the plaintiff] with the responsibility for supervising her performance."  *Id.*  There was no evidence that the supervisor "was in a policymaking position."  *Id.* at 422.

The critical difference between *Kelly-Zurian* and this case is that the supervisor in *Kelly-Zurian* did not exercise any legitimate authority he had by virtue of his position that resulted in the "ad hoc formulation of policy."  *White*, 21 Cal. 4th at 580.  His sexual harassment of the plaintiff was not an "exercise[] of substantial discretionary authority" and did not "ultimately determine[] corporate policy" in a "most crucial aspect of [the] business."  *Id.* at 577.  By contrast, Mr. Guerrero's participation in investigating Roush and terminating her employment was an exercise

of his substantial discretion as campus president to investigate and discipline employees and, as discussed above, resulted in ad hoc policy.

Roush's punitive damages claim withstands summary judgment.

## IV.   Conclusion

The defendants' motion for summary judgment is granted in part and denied in part. (Docket Entry No. 35).  It is granted as to the Title VII claims, the Fair Employment and Housing Act retaliation claim, the § 1102.5(b) claim, the negligent infliction of emotional distress claim, and the intentional infliction of emotional distress claim.  The following claims remain: Fair Employment and Housing Act pregnancy discrimination, California Family Rights Act retaliation, FMLA interference, wrongful termination in violation of public policy, unfair competition under § 17200, and punitive damages.


SIGNED on August 12, 2024, at Houston, Texas.

_____
           Lee H. Rosenthal
       United States District Judge