**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER ROUSH,<br><br>Plaintiff,<br><br>v.<br><br>SAN JOAQUIN VALLEY COLLEGE and KEN GUERRERO,<br><br>Defendants. | Case No. 1:21-cv-0556 JLT FJS<br><br>ORDER RE MOTIONS IN LIMINE<br><br>(Docs. 69–75) |

## I. INTRODUCTION

Jennifer Roush was pregnant and making plans to take maternity leave when she was terminated from her employment at San Joaquin Valley College. Around the same time, Plaintiff and some of her coworkers were subpoenaed to testify before a grand jury about an on-campus assault perpetrated on Plaintiff by her ex-boyfriend. According to the College, Plaintiff was fired because she directed a coworker not to tell her supervisors she would be missing work to testify. Plaintiff maintains, in contrast, that the College fired her either because she was pregnant and about to take leave, or because she had been a victim of crime.

Plaintiff originally filed this action in Tulare County Superior Court. Defendants removed the action to this Court on April 1, 2021. (Doc. 1.) Defendants subsequently moved for summary judgment, and on August 12, 2024, the Court granted the motion in part, disposing of Plaintiff's

Title VII claims, FEHA retaliation claim, California Labor Code section 1102.5(b) claim, and claims for negligent and intentional infliction of emotional distress. (Doc. 49.) The following claims remain for adjudication: pregnancy discrimination under the Fair Employment and Housing Act; retaliation under the California Family Rights Act; interference under the Family and Medical Leave Act; wrongful termination in violation of public policy; unfair competition under California Business and Professions Code section 17200; and Plaintiff's demand for punitive damages.

Plaintiff and Defendants filed motions in limine, which are now before the Court. (Docs. 69–83.)

## II. FACTUAL BACKGROUND

The factual background set forth in the Court's summary judgment order provides helpful context for these motions:

> **A. The Assault Investigation**
>
> In 2010, Jennifer Roush began working as a career services advisor at the Visalia, California campus of San Joaquin Valley College. (Docket Entry No. 35-4 at 98). In 2019, Roush's ex-boyfriend, Richard Ramirez, assaulted Roush in her office at the College. (Docket Entry No. 45-3 at 165). At least three of Roush's co-workers witnessed Ramirez come onto campus and enter Roush's office the day of the assault: Timberly Ferris, Bianca Leal, and Stacey Elenes. (*Id.* at 43–44).
>
> In 2019, the Tulare County District Attorney's Office began investigating Ramirez in connection with the assault. (Docket Entry No. 45-5 at 18). The D.A.'s Office informed Roush that: (1) some of her co-workers would be subpoenaed in March 2020 to testify about the assault before a grand jury, (Docket Entry No. 45-3 at 31); (2) the co-workers could choose when and where they wanted to be served with the subpoenas, (*id.* at 31, 45); and (3) the grand jury proceeding was "highly confidential" and should not be discussed "with anybody," (*id.* at 79).
>
> Roush informed two of her supervisors that College employees would be served with subpoenas and would have to miss work to testify before the grand jury. (Docket Entry No. 45-3 at 46–47; Docket Entry No. 35-6 at 2). The supervisors were Kenneth Guerrero, president of the Visalia campus; and Brandi Hammons, director of graduate services. (Docket Entry No. 45-3 at 46–47).
>
> Roush also told Ms. Hammons what the D.A.'s Office had told her: the grand jury proceeding was confidential and could be jeopardized if the case or the subpoenas were not kept secret.

(Docket Entry No. 45-3 at 79). Despite her concern for secrecy, Roush asked Ms. Hammons if she could give Ms. Elenes notice that she would be served with a subpoena and would have to miss work on March 17. (*Id.* at 81). Ms. Hammons gave Roush permission to talk to Ms. Elenes and gave Ms. Elenes approval to miss work to testify before the grand jury. (*Id.*). Ms. Hammons told Roush that Ms. Elenes would not be doing a "no call/no show" because her absence was approved. (*Id.*). Roush then texted Ms. Elenes that her absence had been approved by Ms. Hammons and said that it would be "okay to no call/no show." (*Id.*). Roush also told Ms. Elenes not to talk to anyone about the case, including Patricia Hruby, the president of the Fresno campus where Ms. Elenes worked. (*Id.* at 84).

On the morning of March 10, 2020, an investigator from the D.A.'s Office came to the president's office at the Visalia campus. (*Id.* at 119). The president, Mr. Guerrero, told the investigator that it was "against our policy" to allow the subpoenas to be served on campus. (*Id.* at 131). The investigator left but returned to campus that afternoon and successfully served the subpoenas on Ms. Elenes, Ms. Ferris, and the campus registrar, Alan Pearce. (*Id.* at 131–32).

After being served with the subpoena, Ms. Elenes notified Ms. Hammons that Roush had told her "to do a no call/no show." (Docket Entry No. 35-6 at 3). Ms. Elenes expressed concern because she knew "that not calling out is unprofessional and [] was unsure of how to handle th[e] situation." (*Id.*). At Ms. Hammons's suggestion, Ms. Elenes called the D.A.'s Office, which "confirmed that she can inform her employer." (*Id.*).

**B. Roush's Termination**

On March 11, 2020, Ms. Hammons reported to the human resources director, Venus Tayco, that Roush had "stated that the employees that were served are not able to tell their employers that they need to miss work, they are required to do a 'no call/no show', If [*sic*] they tell their employer, it can ruin the case." (Docket Entry No. 45-3 at 184). Ms. Hammons continued: "Jennifer telling another employee that she is required to 'no call no show' when that was not the situation, causes Stacy [Elenes] to be at risk for not following protocol when it comes to taking a day off. How should this be addressed with Jennifer?" (*Id.* at 185). Ms. Tayco forwarded the email up her chain of command, stating: "The crux is that campus protocol for subpoenas and employees being served was deliberately breeched [*sic*] by Jennifer for her own gain, bringing personal issues into the workplace and causing disruption. We are expecting termination, pending investigation." (*Id.* at 184).

The College's human resources department conducted an investigation, assisted by Mr. Guerrero. The investigation included receiving email statements from Ms. Pearce, Ms. Elenes, Mr. Guerrero, Ms. Ferris, and Ms. Diana Cote. (*Id.* at 114, 116, 119, 139, 147).

> On March 18, 2020, a "Separation Request Form" was prepared and approved by Mr. Guerrero, vice president of administration Scott Hager, and Ms. Tayco. (*Id.* at 199). The Form reflected that Roush was terminated effective March 18 for "Inappropriate behavior as a leader in the organization to guide and misdirect employees to willfully violate our policy for notifying us of their absence. See attached supporting documentation." (*Id.*). The supporting documentation was Ms. Elenes's email statement, in which she stated that: "I was told by my previous manager [Roush] to no call no show on Tuesday March 17th. I also shared this information with Brandi [Ms. Hammons]." (*Id.* at 201).
>
> **C. Roush's Discrimination Allegations**
>
> Roush contends that the College terminated her employment because: (1) she was pregnant and planning to take maternity leave in May 2020; and (2) she had been a victim of domestic violence. (Docket Entry No. 9).
>
> Roush relies on three statements allegedly made by Mr. Guerrero to support her charge of pregnancy discrimination. First, in January 2020, Roush, Mr. Guerrero, and the college president and CEO, Mike Perry, were giving a senator a tour of the Visalia campus. (Docket Entry No. 35- 4 at 82). According to Roush, Mr. Perry "was overly excited that I was pregnant," which "irritat[ed]" Mr. Guerrero. (*Id.* at 82–83). After the tour, Mr. Guerrero allegedly told Roush: "[O]bviously you're pretty close with Mike Perry, and you seem to know all the bigwigs here. . . . And they're sure excited about your pregnancy." (*Id.* at 84).
>
> Second, in February 2020, Mr. Guerrero allegedly told Roush that he did not want her to "have a miscarriage or anything," but that she would be "responsible" for the College's career placement numbers while she was on maternity leave, and that if "the numbers aren't met," she could be fired. (Docket Entry No. 45-3 at 37).
>
> Third, when Mr. Guerrero met with Roush on March 18, 2020, to terminate her employment, Mr. Guerrero allegedly told Roush, "now you're going on [u]nemployment, not maternity leave." (Docket Entry No. 35-4 at 92).

(Doc. 49 at 1–5.)

## III. LEGAL STANDARDS

### A. Motions in Limine Generally

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citation omitted). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course

of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citations omitted).

Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (Berzon, J., dissenting) (citations omitted). However, "a motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc*., 539 F. Supp. 2d 316, 323 (D.D.C. 2008), as that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997). On the other hand, the rulings on the motions in limine do not preclude either party from arguing the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury.

**B. Federal Rules of Evidence 401-403**

Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In evaluating these Rule 403 considerations, district courts enjoy "wide latitude" to admit evidence. *Hemmings v. Tidyman's Inc*., 285 F.3d 1174, 1184 (9th Cir. 2002). A court may not use Rule 403 to exclude evidence "on the ground that it does not find the evidence to be credible." *See United States v. Evans*, 728 F.3d 953, 963 (9th Cir. 2013) ("Weighing probative value against unfair prejudice under Rule 403 means probative value with respect to a material fact if the evidence is believed, not the degree the court finds it believable."). That is, "a conflict in the evidence goes to the weight of [the evidence], not to its admissibility." *United States v. Candoli*,

870 F.2d 496, 509 (9th Cir. 1989).

**C. Federal Rule of Evidence 404**

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1), and, relatedly, "[e]vidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, Rule 404(b)(2) allows the admission of such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Of course, even if evidence could be offered for a permissible purpose under Rule 404(b)(2), the evidence must also withstand scrutiny under Rule 403.

## IV. ANALYSIS

**A. Motion to Preclude Evidence of Plaintiff's Leave Prior to 2019 (Doc. 69)**

Because the events giving rise to this action occurred in 2019, Plaintiffs seeks to exclude evidence concerning leaves of absence Plaintiff took prior to that year. (Doc. 69 at 6.) Citing Rules 401 and 402, Plaintiff argues that "[t]he central issues for trial concern the conduct and employment decisions challenged in this action, including the circumstances surrounding Plaintiff's employment, the reasons for the challenged decision, and the resulting damages," and that "[e]vidence of Plaintiff's earlier leaves does not, by itself, establish any of those matters. (*Id.* at 6–7.) Even if evidence related to earlier leaves has some "marginal relevance," Plaintiff maintains that the evidence should be excluded under Rule 403 because it will create an unacceptable risk of unfair prejudice and confusion. (*Id.* at 7 (arguing "[t]he jury could improperly infer that Plaintiff was an employee who frequently missed work, was unreliable, or was otherwise less deserving of protection under the law").)

Defendants offer the following factual proffer in opposition to the motion:

> Prior to 2019, SJVC approved Plaintiff's requests for protected leave on several occasions. Plaintiff took FMLA leave from July 17 through August 1, 2012, and despite taking that leave, subsequently received a salary increase effective October 9, 2012. (ECF No. 35-8, ¶¶ 11–12 & Exs. C–D.) She also took FMLA and CFRA leave

> beginning July 31, 2013, returning to full-time employment on October 9, 2013. (Id. ¶ 13 & Ex. E.) In November 2017, Plaintiff took CFRA leave from November 9 through November 22, 2017, followed by another salary increase effective February 27, 2018. (Id. ¶ 14 & Exs. F–G.)

(Doc. 77 at 2.)

Plaintiff is correct that Defendants may not offer evidence of Plaintiff's earlier leaves to show she had a history of absences or any related unfavorable character trait. (Doc. 69 at 8 (citing Fed. R. Evid. 404(b)(1)).) Defendants, however, contend that the evidence is relevant to "how SJVC handled requests for protected leave and how it treated Plaintiff when she requested protected leave" previously. (Doc. 77 at 2.) This is in part because, according to Defendants, "this case goes far beyond a single decision to terminate Plaintiff's employment, but encompasses broad claims of disability discrimination, failure to reasonably accommodate Plaintiff's disability, failure to engage in the interactive process, retaliation, and violations of the FMLA and CFRA." (Doc. 77 at 3.) Defendants indicate their evidence will demonstrate "that SJVC previously approved Plaintiff's protected leave requests on several occasions, did not interfere with such leave, and did not subject her to any sort of retaliation in response to her requests. In, fact SJVC increased her compensation on several occasions after she requested and took leave." (Doc. 77 at 3 (record citations omitted).)

The Court agrees with the Defense (*see* Doc. 77 at 3) that this evidence is relevant to rebutting Plaintiff's assertions that SJVC subjected Plaintiff to discrimination or retaliation or failed to comply with the law and/or its own internal policies and practices related to engaging in the interactive process or providing a reasonable accommodation. As Defendants point out "Defendants' handling of Plaintiff's leave requests is the primary inquiry, and not a collateral matter." (*Id.* at 5.) Likewise, this evidence is relevant to rebut Plaintiff's assertions that Defendants acted with the requisite intent to support an award of punitive damages. Finally, it is unclear how, if at all, the evidence could negatively reflect upon Plaintiff's character, as there is no suggestion that she improperly requested these prior leaves of absence or did so on an unusually frequent basis.

Plaintiff also contends that such evidence would risk confusing the jury about the scope of

the case by drawing the jury into an evaluation of collateral matters, such as: the reasons Plaintiff took earlier leaves; the circumstances surrounding each leave; the duration and timing of the leaves; the documentation and communications concerning those leaves; and Defendants' historical treatment of Plaintiff's absences. (Dc. 69 at 7.) Defendants acknowledge, however, that the "Court retains the power to limit the discussion of prior leaves, redact documents, or exclude cumulative records" (Doc. 77 at 5.)

In sum, evidence related to Plaintiff's prior leaves of absence is not clearly inadmissible such that it should be precluded by way of a motion in limine. Therefore, this motion is **GRANTED IN PART**. The motion is **GRANTED** as unopposed to the extent it requests an order precluding Defendants from using evidence of Plaintiff's past leaves to argue that Plaintiff has any propensity to inappropriately use leave. The motion is otherwise **DENIED**. Nonetheless, the Court directs the parties to meet and confer to discuss the scope of any argument and/or evidence the Defense intends to present on these matters. If the parties cannot agree as to the appropriate scope of argument or line of questioning, they **SHALL** alert the Court to the issue outside the presence of the jury.

### B. Motion to Preclude Evidence of Other Employees Taking Pregnancy Leave (Doc. 71)

As mentioned, Plaintiff claims that her pending pregnancy leave was a factor in her termination; she does not claim her termination was due to a discriminatory policy regarding pregnancy leaves. (*See* Doc. 7 1at 4.) Considering this, Plaintiff moves in limine to preclude Defendants from introducing evidence concerning other SJVC employees' pregnancy leaves. (*Id.*) Plaintiff argues that this evidence irrelevant; its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues misleading the jury, and undue delay; and it is improper character evidence. (*Id.* at 2.)

Plaintiff points out that she was pregnant when SJVC hired Defendant Guerrero. (See Doc. 71 at 6.) She alleges that in his capacity as Plaintiff's supervisor and agent of SJVC, he was hostile to her upcoming pregnancy leave. (*Id.*) Plaintiff asserts that under these circumstances, how SJVC treated other employees' pregnancies is irrelevant to the issue of how SJVC took her

pregnancy into account at the time of her termination. (*Id.*)

Defendants concede (Doc. 79 at 3) that they must identify a permissible purpose for this evidence under Rule 404 and generally suggest that treatment of other similarly situated employees is relevant to establishing Defendants' intent or motive in the circumstances. (Doc. 79.) Defendants contend that because the challenged termination decision involved Guerrero, Vice President of Administration Scott Hager, and Human Resources Director Venus Tayco, "evidence concerning how SJVC, generally, and these decisionmakers, in particular, handled comparable pregnancy leave requests bears direct[ly] on the motivation and intent Plaintiff attributes to them." (Doc. 79 at 2). In a very generic sense, Defendants' position makes logical sense. They argue that "[i]f, for example, a defendant granted disability leave for every employee except for those based on pregnancy, which he consistently denied, this would be evidence of an intent to discriminate based on pregnancy. To the contrary, if that defendant granted every request for pregnancy leave, while denying others, then such evidence would tend to demonstrate that the defendant was not motivated by an intent to discriminate on the basis of pregnancy." (Doc. 79 at 3.) But Defendants have yet to connect those general ideas to any specific evidence. It is unclear, for example, how the leave record of any other employee relates to Plaintiffs' allegations. As mentioned, Plaintiff's allegations that her pregnancy was a factor leading to her termination focus on comments made by Guerrero about her pregnancy. It is unclear whether Defendants intend to offer evidence about other employees who went on pregnancy leave while Defendant Guererro was employed by SJVC. If those employees instead overlapped only with other decisionmakers (e.g., Hager and Tayco), the Court requires additional information to discern how the hypothetical evidence relates to SJVC's intent. Therefore, on this record, Defendants have failed to establish a permissible purpose under Rule 404. Thus, the motion is **GRANTED** without prejudice to the Defense making a more specific showing outside the presence of the jury that any such evidence goes to a permissible Rule 404 purpose and satisfies Rule 403.

**C. Motion to Preclude Defendant Guerrero from Testifying about his Military Service (Doc. 70.)**

Plaintiff moves to preclude Defendants from eliciting evidence or making argument

related to Defendant Guerrero's "military service, rank, awards, or military career" because that information is not relevant to "whether Defendants engaged in the conduct alleged, whether the challenged employment decisions were lawful, or whether Plaintiff suffered damages." (Doc. 70 at 4.) Plaintiff expresses concern that the introduction of such evidence would "invite the jury to draw an improper inference that Guerrero is more credible, more honest, more responsible, or more deserving of favorable treatment because of his military service." (*Id.*) Defendants oppose, countering that such evidence is routinely permitted to provide personal background information to the jury. (Doc. 78.)

Plaintiff's motion is **GRANTED IN PART**. Limited evidence regarding a party's military service, is relevant and admissible "background information that will help the jury understand who the parties in the case are." *Est. of Najera v. City of Anaheim*, No. 8:16-CV-01243-JLS-JCG, 2018 WL 6039870, at *4 (C.D. Cal. July 23, 2018), *aff'd sub nom. Est. of Najera by & through Najera v. City of Anaheim*, 783 F. App'x 792 (9th Cir. 2019) (citations omitted). Defendant Guerrero may recite his employment history, including his military service, and can provide details about these prior jobs if these details bear on the issues in this case, such as relevant training and experience in employee supervision or human resources. Otherwise, he may not expand upon his military experience, as doing so may stray into impermissible character evidence. *See United States v. Lucas*, 395 F. Supp. 3d 241, 256–57 (W.D.N.Y. 2019), *aff'd*, No. 19-3937-CR, 2021 WL 3700944 (2d Cir. Aug. 20, 2021) (finding the admission of some background information about witness appropriate, noting that witness "was not asked about and did not testify about awards or commendations that he had received as part of his military service—which could be problematic").

**D. Motion to Preclude Evidence of Underlying Domestic Violence and Criminal Proceedings (Doc. 75)**

Defendants move to exclude "unnecessary evidence concerning the underlying domestic violence and subsequent criminal proceedings" that gave rise to the subpoenas that underly the dispute in this case. (*See* Doc. 75.) Defendants concede that the subpoenas and related employment communications are relevant but maintain that "the details of the underlying abuse

and the perpetrator's criminal prosecution add little to the jury's evaluation of those events" and "would instead create a substantial risk of unfair prejudice, confusion, and unnecessary collateral disputes." (*Id*. at 2.) According to the Defense "[i]t does not matter if the grand jury were investigating theft, extortion, embezzlement, or domestic violence," so the facts of the underlying crime are irrelevant and Plaintiffs should not be permitted to provide "detailed testimony and exhibits concerning the underlying assault, injuries, threats, protective orders, criminal charges, conviction, and punishment, including PLF000675–000677."[1] (*Id*. at 2.)

Because the workplace violence incident occurred in Plaintiff's office on the SJVC campus, and was witnessed by SJVC employees, those employees subsequently became witnesses in the criminal investigation, which included confidential grand jury proceedings. As a result, the Court agrees with Plaintiff that:

> The events cannot be separated into isolated pieces without impairing the jury's ability to evaluate the parties' conduct. The underlying incident led to the criminal investigation. The investigation resulted in subpoenas to SJVC employees. The subpoenas and their service became the subject of communications among Plaintiff, her supervisors, and SJVC employees. Those communications then became the basis for the inquiries about Plaintiff that resulted in Plaintiff's termination. The underlying incident is therefore part of the factual sequence necessary to understand the employment decision being challenged. Defendants' proposed exclusion of evidence would leave the jury with an incomplete and potentially misleading account of the events surrounding Plaintiff's termination, which would unfairly prejudice Plaintiff.

(Doc. 83 at 6.)

However, details about the underlying incident are not relevant and are likely to unfairly prejudice Defendants. Therefore, the motion is **GRANTED IN PART**. Plaintiff may indicate that her former partner assaulted her in her office at SJVC, but she may not discuss why that incident occurred, her history with her partner, or any details about the incident. Her testimony must be limited to information necessary to explain how she interacted with Defendants and what they did in response.

---

[1] Defendants did not attach these documents for the Court's review nor direct the Court to where they might be in the existing record.

**E. Motion Regarding Dr. Boken's Testimony (Doc. 73)**

Plaintiff identifies Dr. Leanna Boken on her trial witness list, describing her as Plaintiff's obstetrician/gynecologist. (Doc. 62 at 37.) It is undisputed that Plaintiff did not disclose Dr. Boken in her initial disclosures, nor did she timely (or otherwise) identify Dr. Boken as an expert under Rule 26(a)(2). (*See* Doc. 81 at 3–4.) Defendants move in limine to preclude Dr. Boken from testifying outright; in the alternative, Defendants move to limit her testimony to that of a percipient witness and preclude her from offering any undisclosed expert opinions concerning medical causation, diagnosis, or prognosis. (Doc. 73.)[2] Plaintiff opposes the motion. (Doc. 81.)

Rule 37(c)(1) provides for exclusion of any evidence or information that a party fails to disclose in a timely manner, unless the violation was harmless or substantially justified. To determine whether to preclude the introduction of evidence under Rule 37, a court considers: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence." *San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) (*quoting Dey. L.P. v. Ivax Pharms., Inc.*, 233 F.R.D. 567, 571 (C.D. Cal. 2005)); *see also Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

Plaintiff maintains that her failure to disclose Dr. Boken was harmless because Plaintiff testified about Dr. Boken during her deposition. (Doc. 81.) "The mere mention of a witness name in a deposition or document is generally not sufficient" to meet the harmlessness standard of Rule 37(c)(1), rather "the party offering the witness must demonstrate how the discovery process disclosed that the witness was likely going to be called at trial." *Classical Silk, Inc. v. Dolan Grp., Inc.*, No. CV 14-09224-AB (MRWX), 2016 WL 7638112, at *8 (C.D. Cal. Mar. 21, 2016); *see also Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("That another witness has made a passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure

---

[2] To the extent the title of this motion could be construed as a broader request to preclude any other witness from offering expert testimony, the body of the motion makes no such argument.

obligations. An adverse party should not have to guess which undisclosed witnesses may be called to testify."); *United States v. Booth*, No. 1:09-cv-1689 AWI GSA, 2013 WL 3541615, *11 (E.D. Cal. 2013) ("A party may show lack of surprise and harmlessness by explaining how the opposing side had full notice that of the existence of the witness and fully understood the important role he/she had in relation to the facts of the case."). Here, Plaintiff testified at her deposition that Dr. Boken was the treating physician she visited immediately after her termination. (*See* Doc. 35-4 at 69.) There is no indication that this testimony constituted notice that Dr. Boken would be called at trial because there is no showing how it would bear on any issue to be determined in this trial. Indeed, the fact that a pregnant woman visits her obstetrician is normal and expected in most pregnancies. Without more, this insufficiently notified Defendants of the witness and her relationship to the facts of this case. As a result, Defendants' motion is **GRANTED** on this ground.

In addition, because Plaintiff failed to disclose Dr. Boken as an expert, the motion is **GRANTED**. Rule 26(a)(2)(C) requires disclosure of opinions held by experts not required to provide a written report. Specifically, when identifying non-retained experts, such as treating physicians, a party must state the "subject matter" on which the witness is expected to testify and "a summary of the facts and opinions" to which the witness is expected to testify. *See* Fed. R. Civ. P. 26(a)(2)(C). As mentioned, it is undisputed that Plaintiff failed to comply with this requirement. Plaintiff likewise does not suggest that her failure to comply with Rule 26 was "substantially justified" or "harmless" and therefore cannot avoid the exclusionary effect of Rule 37(c)(1). *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [the requirements of Rule 26(a)(2)] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). In fact, she appears concede this point, indicating that the issue presented is whether the Court should "exclud[e] a treating physician from providing any relevant factual testimony whatsoever." (Doc. 81 at 5; *see also id*. at 4 (Plaintiff indicating she seeks only "to call Dr. Boken principally as a treating physician and percipient witness, not as a physician retained to develop new medical opinions for this litigation").) Thus, the motion is **GRANTED** on this basis as well.

**F. Motion to Preclude Legally Unavailable Theories of Individual Liability Against Defendant Guerrero (Doc. 74)**

Defendants next move to preclude Plaintiff from seeking to impose personal liability on Guerrero under claims that do not permit individual supervisory liability. (Doc. 74.) Defendants request an order limiting Plaintiff's arguments, jury instructions, and verdict questions to legally available theories of liability. (*Id.* at 2.) A motion in limine is not the appropriate mechanism to address the content of jury instructions or verdict forms, so the Court will address here only the request to limit Plaintiff's arguments before the jury.

Defendants are correct that Guerrero cannot be personally liable for FEHA pregnancy discrimination based on his supervisory role. *Reno v. Baird*, 18 Cal. 4th 640, 663 (1998) (supervisors who do not themselves qualify as "employers" may not be sued under FEHA for discriminatory acts), and assert that Guerrero's alleged participation appears to be limited to his role as a supervisor. (Doc. 74 at 2–3.) Defendants relatedly argue (*id.* at 3–4) that California law appears to limit individual supervisors' exposure to CFRA retaliation claims. *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1173 (2008), held that individual supervisors cannot be liable for retaliation under FEHA, and, as a judge in this District has pointed out, CFRA is part of FEHA, *see Van Scoy v. New Albertson's Inc.*, No. 2:08-CV-02237-MCE, 2010 WL 2650607, at *2 (E.D. Cal. July 1, 2010), so *Jones*' holding likely should be extended to CFRA claims. Likewise, a wrongful termination in violation of public policy claim lies against the employer, not the individual supervisor. *Miklosy v. Regents of the Univ. of Cal.*, 44 Cal. 4th 876, 900–01 (2008). Defendants concede, however, that Guerrero is not insulated from all potential personal liability in this suit. (Doc. 74 at 4.)

Plaintiff agrees that Mr. Guerrero cannot be personally liable for some of Plaintiff's claims but emphasizes Defendants' concession that any limitation imposed in response to this motion would "not restrict Plaintiff from introducing otherwise admissible evidence of Guerrero's conduct or arguing that his actions are attributable to SJVC." (*See* Doc. 74 at 3; Doc. 82 at 2.)

Notably, Plaintiff does not oppose Defendants' request that she be precluded from arguing to the jury any unavailable theories of liability. Thus, the motion is **GRANTED IN PART**.

Plaintiff **SHALL NOT** make any arguments related to Guerrero's personal liability until such time as the jury instructions are settled. This order does not preclude Plaintiff from introducing otherwise admissible evidence of Guerrero's conduct and/or arguing that his actions are attributable to his employer.

**G. Motion to Bifurcate Punitive Damages (Doc. 72)**

Defendants seek bifurcation of the trial into two stages: (1) liability and compensatory damages, and (2) punitive damages. (Doc. 72.) Defendants argue bifurcation would: avoid any unfair prejudice that might result from presentation of evidence about Defendants' income, assets, and net worth during the liability phase; avoid any potential confusion of the jurors; and promote judicial economy. (*Id*. at 2–3.) Plaintiff opposes the motion. (Doc. 80.) Plaintiff agrees not to present evidence of Defendants' financial condition during the liability phase but argues there is no need to remove the issue of entitlement to punitive damages from the liability phase. (*Id*. at 5.)

Pursuant to Federal Rule of Civil Procedure Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The decision to bifurcate is within the sound discretion of the trial court. *See Arthur Young & Co. v. U.S. District Court*, 549 F.2d 686, 697 (9th Cir. 1977). "A decision ordering bifurcation is dependent on the facts and circumstances of each case." *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1127 (E.D. Cal. 2020) (citation omitted).

Courts consider several factors to determine whether bifurcation is appropriate under Rule 42, including "potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result" from bifurcation. *Green v. Baca*, 226 F.R.D. 624, 630 (C.D. Cal. 2005); *see also Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (indicating a trial may be bifurcated "to avoid the risk of prejudice"); *Zivkovic v. Southern California Edison Co*., 302 F.3d 1080, 1088 (9th Cir. 2002) (explaining bifurcation under Rule 42(b) may "defer[] costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues"). Notably, "[c]ourts routinely bifurcate liability and

punitive damages claims in actions with claims arising under 42 U.S.C. § 1983." *Motley v. City of Fresno*, No. 1:15-cv-00905-DAD-BAM, 2020 WL 3642502 at *2, n.1 (E.D. Cal. July 5, 2020).

Crucially, Plaintiff agrees she will not present evidence of Defendants' financial status during the liability phase, which is the focus of Defendants' motion. Therefore, and because it preserves this Court' limited resources, the Court will bifurcate the issue of the amount of punitive damages from the issue of whether punitive damages may be awarded. The Court finds neither party would be prejudiced by this form of bifurcation, because in the first stage, the jury will determine whether they are entitled to punitive damages. In the second stage, which would follow immediately, the jury would determine the amount punitive damages. Bifurcation in this manner would avoid potential confusion of issues for jurors, as the scope of evidence in the first phase would be limited to liability, whether the conduct gives rise to punitive damages and compensatory damages. This procedure will also expedite and economize trial by precluding the presentation of the financial status of the defendants unless and until it is necessary. *See Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1101-02 (C.D. Cal. 2002) (finding bifurcation of the punitive damages in an action arising under 42 U.S.C. § 1983 would "promote convenience and efficiency"). Accordingly, Defendants' motion to bifurcate the trial into two stages is **GRANTED IN PART**. Evidence and arguments relating to the amount of punitive damages will be excluded from the first stage of trial, though whether the plaintiffs are entitled to an award of punitive damages will be determined in the first phase.

## V. CONCLUSION AND ORDER

For the reasons set forth above:

1. Plaintiff's motion in limine regarding evidence of her prior leaves of absence (Doc. 69) is **GRANTED IN PART**.

2. Plaintiff's motion in limine regarding evidence of other employees' pregnancy leaves of absence (Doc. 71) is **GRANTED** without prejudice to a more specific showing by the Defense at trial.

3. Plaintiff's motion in limine regarding testimony by Defendant Guerrero about his

military service (Doc. 70) is **GRANTED**.

4. Defendants' motion in limine regarding evidence of the underlying domestic violence and criminal proceedings is (Doc. 75) is **GRANTED IN PART**.

5. Defendants' motion in limine regarding Dr. Boken's testimony (Doc. 73) is **GRANTED IN PART**.

6. Defendants' motion in limine regarding unavailable theories of individual liability (Doc. 74) is **GRANTED IN PART**.

7. Defendants' motion to bifurcate punitive damages from liability (Doc. 72) is **GRANTED IN PART**.

**Counsel SHALL discuss these rulings with their clients and witnesses to ensure STRICT compliance with this order.**

IT IS SO ORDERED.

Dated: November 15, 2026

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE